

UNITED STATES DISTRICT COURT
STATE OF MINNESOTA
COURT FILE NO.: CV

Eric McClendon,

Sheryleita McClendon

Myrtle Fragier,

                  Plaintiffs,

vs.                                         COMPLAINT

                                                  05cv 2905 MJD/AJB

Wells Fargo Financial Acceptance,
    a foreign corporation,
and

Repossessers, Inc.,
    A domestic corporation,
                        Defendants.

## I.

## INTRODUCTION

1. This is an action for damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA") and pendent state law claims arising out of the wrongful repossession of Plaintiffs' vehicle.

## II.

## JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §1337, and pendent jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

SCANNED
DEC 1 4 2005
U.S. DISTRICT COURT MPLS

## III.

## PARTIES

3. Plaintiff, Eric McClendon, is a natural person residing in the City of Bloomington, County of Hennepin, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

4. Plaintiff, Sheryleita McClendon, is a natural person residing in the City of Bloomington, County of Hennepin, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Plaintiff, Myrtle Fragier, is a natural person residing in the City of Springfield, County of Sangamon, State of Illinios, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

6. Defendant Wells Fargo Credit Financial Acceptance, Inc. (hereinafter "Wells Fargo") is a foreign corporation and is a "creditor" as defined by 15 U.S.C. § 1692a(4).

7. Defendant, Repossessers, Inc (hereinafter "RI"), is a Minnesota corporation and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## IV.

## FACTUAL ALLEGATIONS

8. On or about July 6, 2002, Plaintiffs entered into a consumer credit transaction with Walser Apple Valley Cadillac, Oldsmobile concerning a loan, which was secured by a 2001 Chevrolet Impala (hereinafter "the vehicle"). (*See* Exhibit 1).

9. The loan was immediate assigned to Defendant Wells Fargo.

10. During the course of the consumer credit transaction, Plaintiffs made and Defendant Wells Fargo on a routine and regular basis accepted payments in a manner other than

that specified in the original loan agreement. Specifically Plaintiffs fell behind on their scheduled monthly payments and later caught up without Defendant Wells Fargo declaring them in default or take other action.

11. On or before November 8, 2005, Defendant Wells Fargo sent Plaintiff Eric McClendon letter advising Plaintiff that he was past due $$2,953.92. (*See* Exhibit 2).

12. On or before November 8, 2005, Defendant Wells Fargo sent Plaintiff Myrtle Fragier a letter substantially similar to Exhibit 2. (See Exhibit 3)

13. Exhibits 2 and 3 indicate that this amount was due on November 20, 2005.

14. Upon information and belief, Defendant Wells Fargo failed to send to Plaintiffs written notice of its intention to repossess the vehicle securing the consumer credit transaction and requiring that they comply with the strict terms of the contract creating this consumer debt, as required pursuant to Cobb v. Midwest Recovery Bureau Co., *295 N.W.2d 232* (Minn. 1980)

15. On or before November 9, 2005, Plaintiff Eric McClendon parked the vehicle in the garage at his place of residence, an apartment building located at 9800 Logan Ave. S. in Bloomington, Minnesota. The apartment garage has only two access points, both of which automatically shut and lock.

16. On or before November 9, 2005, without first having sent the requisite Cobb notice Defendant Wells Fargo negligently and wrongfully enforced its security interest and ordered the repossession of the collateral listed in Exhibit 1.

17. Defendant Wells Fargo hired Defendant RI to enforce its security interests.

18. Defendant RI repossessed the Plaintiff's 2001 Chevrolet Impalla from Plaintiff's locked garage sometime on or about November 9, 2005.

19. Upon information and belief, Plaintiff believes that Defendant RI's agent obtained entry to the lock garage by damaging the door lock in some manner, because subsequent inspection by the landlord indicated that the lock had been jammed and need to be replaced.

20. Plaintiffs have incurred out-of-pocket damages, including but not limited to loss of the vehicle, lost wages, and expenses related to loss of use of the vehicle.

21. The Defendants illegal conduct was intentional and in deliberate disregard for Plaintiffs' rights under state and federal law.

22. At all times material hereto, Defendant RI was acting as the agent, within the course and scope of its employment, for Defendant Wells Fargo.

V.

CAUSES OF ACTION

COUNT I.

VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

23. Plaintiff incorporate by reference paragraphs 1 through 27 as though fully stated herein.

24. The foregoing deliberate acts by Defendants Wells Fargo and RI constitute violations of the Fair Debt Collection Practices Act ("FDCPA"), including but not limited to 15 U.S.C. § 1692f(6).

25. Specifically, Defendant Well Fargo's failure to provide Plaintiffs' with the requisite Cobb notice prohibited it from exercising the right to self-help repossession of the Plaintiffs' vehicle.

26. Defendants breached the peace in gaining entry into a locked garage in violation Minn. Stat. § 336.9-609 which permits self-help repossession only if it can be accomplished without breach of the peace.

27. Defendants' repossession by breaching the peace violated the FDCPA including but not limited to 15 U.S.C. § 1692f(6).

28. In violating the aforementioned provisions of the FDCPA, Plaintiffs have suffered humiliation and out-of-pocket loss constituting actual damages pursuant to 15 U.S.C. § 1692k(a)(1).

29. As a result of the above violations of the FDCPA, Defendants are liable to Plaintiffs for their actual damages, statutory damages, and costs and attorneys' fees, pursuant to 15 U.S.C. § 1692k.

## COUNT II.

## CONVERSION

30. Plaintiff incorporate by reference paragraphs 1 through 33 as though fully stated herein.

31. The wrongful repossession by Defendants Wells Fargo and RI constituted willful conversion of Plaintiff's vehicle and personal property.

32. Defendants are liable for the conversion of the Plaintiffs' personal property provided by Minn. Stat. § 336.9-507.

## COUNT III.

## THEFT

33. Plaintiff incorporate by reference paragraphs 1 through 36 as though fully stated herein.

34. The wrongful repossession by Defendants Wells Fargo and RI constituted theft of Plaintiffs vehicle and personal property as defined by Minn. Stat. § 609.52 Subd 2.

35. Defendants are liable for the theft of the Plaintiff's personal property provided by Minn. State § 332.51.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment as follows:

    a.    for an award of statutory damages of $1,000.00 per violation pursuant to 15 U.S.C. §1692k against Defendants.

    b.    for an award of actual damages, costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k against Defendants.

    c.    for an award of statutory damages according to Minn. Stat. §336.9-625 for the wrongful repossession against Wells Fargo for the acts of its repossession agent RI;

    d.    for an award of statutory damages according to Minn. Stat. § 332.51 for the theft against Wells Fargo for the acts of its repossession agent RI.

    e.    for such other and further relief as may be just and proper.

-7-

Dated this ___9___ day of December 2005.

                                              **Slade Legal Services**

BY: _____
        Nicholas P. Slade
        Attorney for Plaintiff
        Attorney I.D. #: 270787
        430 Oak Grove Street, Ste. 100
        Minneapolis, MN 55403
        Ph. 612 990-3203

VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA    )
                     ) ss
COUNTY OF RAMSEY     )

Eric McClendon, having been duly sworn, and upon oath deposes and says:

1. That he is the Plaintiff in the above-entitled proceeding.
2. That this Complaint has been read that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, that the facts contained in it are true.
3. That it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
4. That it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.
5. That it has been made in good faith and not for the purpose of harassment.

_____
Eric McClendon

Subscribed and sworn to before me
this ___9___ day of December, 2005.

_____
Notary Public

NICHOLAS P SLADE
NOTARY PUBLIC - MINNESOTA
My Comm. Expires Jan. 31, 2010

VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA    )
                     ) ss
COUNTY OF RAMSEY      )

Sheryleita McClendon, having been duly sworn, and upon oath deposes and says:

6. That she is the Plaintiff in the above-entitled proceeding.
7. That this Complaint has been read that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, that the facts contained in it are true.
8. That it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
9. That it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.
10. That it has been made in good faith and not for the purpose of harassment.

*(signature)*
Sheryleita McClendon

Subscribed and sworn to before me
this ____ day of December, 2005.

_____
Notary Public

NICHOLAS P SLADE
NOTARY PUBLIC - MINNESOTA
My Comm Expires Jan. 31, 2010

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Buyer |
|---|---|---|
| No. Date | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, over time, the Motor Vehicle (Vehicle) and services described below. Your purchase is subject to the terms and conditions of this contract and security agreement (Contract). The Vehicle is sold in its present condition, together with the usual accessories and attachments.

| Description of Motor Vehicle Purchased | Year Make Model | VIN Lic. No./Year ☐ New ☐ Used | Other: |
|---|---|---|---|

Description of Trade-In _____

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ _____, plus finance charges accruing on the unpaid balance at the rate of _____ % per year from today's date until paid in full. Finance charges accrue on a _____ day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **LOAN ADMINISTRATION FEE:** You agree to pay an additional, nonrefundable loan administration fee of $25.00 that will be ☐ paid in cash. ☐ paid pro rata over the contract term. ☐ withheld from the proceeds (if this fee is withheld from the proceeds, the amount is included in the principal sum).

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ _____ |
|---|---|---|---|---|
| _____ % | $ | $ | $ | $ |

**Payment Schedule:** Your payment schedule will be _____ When Payments Are Due _____

| Number of Payments | Amount of Payments | | |
|---|---|---|---|
| | | | |

**Security:** You are giving a security interest in the Motor Vehicle purchased.
☐ **Late Charge:** If a payment is more than _____ days late, you will be charged _____. ☐ This amount may increase so as to always be the highest amount allowed by law under Minn. Stat. § 47.59.
**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the loan administration fee.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____
☐ Single ☐ Joint Prem. $ _____ Term _____
Credit Disability: Insured _____
☐ Single ☐ Joint Prem. $ _____ Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer _____ d/o/b _____ Buyer _____ d/o/b _____

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ _____. If you get insurance from or through us you will pay $ _____ for _____ of coverage.

This premium is calculated as follows:
☐ $ _____ Deductible, Collision Coverage $ _____
☐ $ _____ Deductible, Comprehensive Cov. $ _____
☐ Fire-Theft and Combined Additional Coverage $ _____
☐ _____ $ _____

Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.

☐ **MOTOR VEHICLE SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Motor Vehicle Service Contract to cover _____
This Service Contract will be in effect for _____

### ITEMIZATION OF AMOUNT FINANCED

Vehicle Price (incl. sales tax of $ _____) $ _____
Service Contract, Paid to: _____ $ _____
Cash Price $ _____
Manufacturer's Rebate $ _____
Cash Down Payment $ _____
Deferred Down Payment $ _____
   a. Total Cash/Rebate Down $ _____
b. Trade-In Allowance $ _____
c. Less: Amount owing $ _____
   Paid to: _____
   d. Net Trade-In (b. minus c.) $ _____
   e. Net Cash/Trade-In (a. plus d.) $ _____
Down Payment (e.; disclose as $0 if negative) $ _____
Unpaid Balance of Cash Price $ _____
Paid to Public Officials - Filing Fees $ _____
Insurance Premiums* $ _____
Amount to Finance line e. (if e. is negative) $ _____
To: _____ $ _____
To: _____ $ _____
To: _____ $ _____
To: _____ $ _____
Total Other Charges/Amounts Pd. to Others $ _____
Less: Prepaid Finance Charges $ _____
Amount Financed $ _____

*We may retain or receive a portion of this amount.

### NOTICE TO BUYER
(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

| ASSIGNMENT: This Contract and Security Agreement is assigned to _____ the Assignee, phone _____. This assignment is made ☐ under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse. Seller: By _____ Date _____ |
|---|

Buyer: _____
Signature _____ Date _____

Signature _____ Date _____

Seller: By _____

EXHIBIT 1

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, you have a right to a refund of the excess charge. If you agree, or if you do not make a timely request for a refund, we will apply the refund amount first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

This Contract is governed by the laws of Minnesota and the United States of America.

**NAME AND LOCATION:** Your name and address indicated on page 1 are your exact legal name and your principal residence. You will provide us with at least 30 days notice prior to changing your name or principal residence.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance, but no refund will be paid if the amount of the refund would be less than $5.00.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract. If this Contract is subject to Minn. Stat. § 168.71, the amount of our attorneys' fees you must pay will not exceed 15% of the amount due and payable under this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
A. We may require you to immediately pay us, less any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the interest rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**RETURNED CHECK CHARGE:** You agree to pay a service charge for each returned check or returned automatic payment request. The amount of the service charge will be $30.00.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. (Generally, loss payee is the one to be paid the policy benefits in case of loss or damage to the property.) In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. If the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. We will notify you if we do so. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the interest rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full. However, if this Contract is assigned, and the Assignee is not a financial institution as defined by Minn. Stat. § 47.59, this amount will earn finance charges from the date paid at 8% per year.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WAIVER: To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; (3) give notice that we intend to make, or are making, this Contract immediately due; or, (4) obtain official certification of nonpayments.**

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

Signature _____ Date _____

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

---

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

# STATEMENT



Account Number: 4517100

Eric Mcclendon
9800 Logan Ave S
#12
Bloomington, MN 55438

For Questions Concerning Your Payment On A Past Due Account, Please Call Your Local Collections Center At 1-800-365-0094.

For All Other Questions, Please Call Our Central Customer Service Center At 1-888-346-4357.

Make Checks Payable To:
**Wells Fargo Financial Acceptance, Inc.**

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| 10/02/2005 | Previous Billed Amount | 1,724.07 |
| 10/04/2005 | Returned Check Fee | 30.00 |
| 10/04/2005 | Returned Check | 800.00 |
| 11/02/2005 | Monthly Payment Due - 11/20/2005 | 399.85 |
| 11/02/2005 | Insurance Payment Due - 11/20/2005 | 95.57 |

**Total Payment Due 11/20/2005**
2,953.92

*Detach At Perforation And Return Bottom Portion With Payment. Do Not Send Cash.*

Record Changes To Address Or Phone Below:

| | |
|---|---|
| Eric Mcclendon<br>9800 Logan Ave S<br>#12<br>Bloomington, MN 55438<br>(952) 229-4394 | NAME:<br>STREET:<br><br>CITY:                    STATE:       ZIP:<br>HOME PHONE:<br>WORK PHONE: |

Amount Paid:
Account Number:    4517100
Due Date:          11/20/2005
Total Payment Due: 2,953.92

Wells Fargo Financial Acceptance, Inc.
P O Box 13460
Philadelphia, PA 19101-3460

EXHIBIT 2

10000451710020295392000008

11 2/01 (AUTO/FS)



# STATEMENT

For Questions Concerning Your Payment On A Past Due Account, Please Call Your Local Collections Center At 1-800-565-0094.

Account Number: 4517100

For All Other Questions, Please Call Our Central Customer Service Center At 1-888-346-4357.

Myrtle Fragier
1215 E Jackson
Springfield, IL 62703

Make Checks Payable To:
**Wells Fargo Financial Acceptance, Inc.**

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| | Previous Billed Amount | 1,724.07 |
| 10/02/2005 | Returned Check Fee | 30.00 |
| 10/04/2005 | Returned Check | 800.00 |
| 10/04/2005 | Monthly Payment Due - 11/20/2005 | 399.85 |
| 11/02/2005 | Insurance Payment Due - 11/20/2005 | 95.57 |
| 11/02/2005 | | |

**Total Payment Due 11/20/2005**
2,953.92

*Detach At Perforation And Return Bottom Portion With Payment. Do Not Send Cash.*

Record Changes To Address Or Phone Below:

| Myrtle Fragier<br>1215 E Jackson<br><br>Springfield, IL 62703<br>(217) 525-3532<br>(952) 906-9957 | NAME:<br>STREET:<br><br>CITY:                  STATE:         ZIP:<br>HOME PHONE:<br>WORK PHONE: |
|---|---|

Amount Paid:
Account Number: 4517100
Due Date: 11/20/2005
Total Payment Due: 2,953.92

Wells Fargo Financial Acceptance, Inc.
P O Box 13460
Philadelphia, PA 19101-3460

EXHIBIT 3

1.00004 51.71.002029539 20000008